**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Kevin FAY, et al., | Case No.: 22-cv-1221-AGS-DEB |
|---|---|
| Plaintiffs, | **ORDER GRANTING PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS (ECF 16) AND DENYING SUMMARY JUDGMENT FOR DEFENDANT (ECF 17)** |
| v. | |
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., et al., | |
| Defendants. | |

After plaintiffs' home was damaged in a remodel, they believed everything was covered by their renovator's insurance. The insurance company disagreed. On summary judgment, plaintiffs seek a ruling that the insurer should have defended the renovator and indemnified any losses. The insurance company urges the opposite outcome.

## BACKGROUND

In 2017, plaintiffs Kevin and Marnie Fay contracted with Accelerated Construction & Developing for a "major renovation" of their duplex in La Jolla, California. (ECF 21-7, at 34; *see* ECF 21-6, at 24–27.) Later that year, Accelerated removed the existing roof, but left the structure "completely open and exposed to the elements," resulting in "extensive water damage." (ECF 21-6, at 18.) When Accelerated later installed a replacement roof, its "poor workmanship" and use of "the wrong materials" resulted once again in "significant water intrusion" and damage. (ECF 21-7, at 35.)

In 2019, the Fays sued Accelerated in state court. (*See* ECF 21-7, at 48–50; ECF 21-8, at 1–7.) Accelerated's insurer—defendant Associated Industries Insurance Company, Inc. (AIIC)—declined to defend or indemnify, citing "no potential for coverage." (ECF 16-1, at 25; ECF 21-8, at 44–50; ECF 21-9, at 1–15.) Accelerated thus funded its own defense for two years. (ECF 16-1, at 9; *see* ECF 16-4, at 53–64.) Fearing bankruptcy, Accelerated finally settled, agreeing to entry of a stipulated judgment.

1

(ECF 16-4, at 56–57; *see id.* at 61–64.) It also gave the Fays all its rights against AIIC arising from failure to provide coverage. (ECF 16-1, at 9, 25–26; ECF 16-4, at 58.)

The Fays sued AIIC to enforce those rights, claiming breach of the policy and of the covenant of good faith.

## DISCUSSION

The Fays now seek summary judgment on AIIC's breach of its duties to defend and to indemnify Accelerated and on its breach of the implied covenant of good faith and fair dealing. (ECF 16-1, at 9.) AIIC moves for a determination that it never had a duty to defend and for summary judgment on the Fays' claims, since all are predicated on that duty. (ECF 17-1, at 29.) "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**A.    Duty to Defend**

To establish a duty to defend for summary-judgment purposes, an insured need only "prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." *Montrose Chem. Corp. v. Superior Ct.*, 861 P.2d 1153, 1161 (Cal. 1993) (emphasis omitted). In other words, the insurer must show that the complaint against its policyholder "can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Id.* at 1160 (emphasis omitted).

The material facts here are uncontested. The sole remaining questions concern interpretation of the insurance policy as a matter of law. "[P]roper coverage analysis begins by considering whether the policy's insuring agreements create coverage for the disputed claim. . . . If coverage exists, then the court considers whether any exclusions apply." *Sony Computer Ent. Am. Inc. v. American Home Assur. Co.*, 532 F.3d 1007, 1017 (9th Cir. 2008). The burden is on the insured "to bring the claim within the basic scope of coverage." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 625 (Cal. 1995). If the insured succeeds, the insurer must then prove the claim falls within an exclusion. *See id.*

### 1. *Basic Scope of Coverage*

Plaintiffs have met their burden of bringing their claims "within the basic scope of coverage." *See Waller*, 900 P.2d at 625. The "Insuring Agreement" language in the "Commercial General Liability" coverage forms of both policies generally covers claims against Accelerated for "occurrences" of "property damage" occurring during the "policy period." (ECF 21-1, at 28; ECF 21-3, at 45.) According to the uncontested report of AIIC's inspector, Accelerated removed the roof of the Fays' property in November 2017. (ECF 21-6, at 18.) But Accelerated left the interior open to the elements, including rain. (*Id*.) That qualifies as an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ECF 21-1, at 41; ECF 21-4, at 8.) The rain caused "property damage," specifically, "extensive water damage to the second floor" and to the "ceiling on the first floor in one room." (ECF 21-6, at 18; *see also id*. at 18–19 (describing various other types of property damage); ECF 21-1, at 41 (defining "Property damage"); ECF 21-4, at 8 (same).) Finally, Accelerated and its subcontractors performed all their work at the Fay property between July 2017 and May 2018—well within the 2016–2018 policy periods. (ECF 16-1, at 8; ECF 21-1, at 12; ECF 21-3, at 27.)

### 2. *Exclusion*

So it's AIIC's burden to prove that the claims are "specifically excluded." *Aydin Corp. v. First State Ins. Co.*, 959 P.2d 1213, 1215 (Cal. 1998). To be enforceable, an exclusionary provision "must be conspicuous, plain and clear" and "placed and printed so that it will attract the reader's attention." *Haynes v. Farmers Ins. Exch.*, 89 P.3d 381, 385 (Cal. 2004) (cleaned up). "A conspicuous, unambiguous applicable exclusion will override the insuring clause and eliminate coverage the policy might otherwise afford." *American Star Ins. Co. v. Insurance Co. of the W.*, 284 Cal. Rptr. 45, 47 (Ct. App. 1991). Unlike coverage provisions, which are "interpreted broadly so as to afford the greatest possible protection to the insured," "exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003).

a. *Residential-Property Exclusion*

AIIC contends that the loss here falls under a well-defined exclusion regarding residential-property construction. Both policies contain as their first component—appearing up front, even before the basic insuring language—an endorsement titled "Exclusion—Designated Residential Construction Work." (ECF 21-1, at 26; ECF 21-3, at 43.) The Fays concede its conspicuousness. (*See* ECF 16-1, at 16; ECF 18, at 14.) The exclusion provides that coverage does not extend to "property damage" that arises out of any "residential construction work"—broadly defined as work "in any way related" to "residential property," which is in turn defined, in relevant part, as "[s]tructures intended for use or used, in whole or in part, as human dwellings." (ECF 21-1, at 26–27; ECF 21-3, at 43–44.) No one contests that the Fays' home is intended for such use.

Does that mean the Fays' home is defined as "residential property" and thus excluded from coverage? Not so fast, say the Fays. The policy goes on to clarify: "'Residential property' does not include apartments,"[1] which is how the Fays characterize their duplex. (ECF 21-1, at 27); *see also* ECF 21-3, at 44 (same).) Everyone seems to agree that work on "apartments," as a general category, would be covered.

b. *"Apartments"*

We turn then to the all-important meaning of "apartments." The Fays assert that their duplex "is in fact a two unit apartment"; Mr. Fay "is the landlord and happens to live in one of the units." (ECF 16-1, at 20.) They contend that the "legal ownership" of the property "is identical to apartment ownership," in that a single party owns both units and is entitled to (and does) rent out one or both. (ECF 24, at 5.) AIIC disagrees with this

---

[1] The Court need not decide whether this language has the effect of "giving back" coverage for apartments as an exception *after* excluding coverage for them or of *removing* apartments from the exclusion in the first place. The Court agrees with defendant that it is an aspect of the exclusion, which means AIIC bears the burden. *See Waller*, 900 P.2d at 625; (ECF 21, at 28–29). But the result would be the same regardless.

4

interpretation but offers little in response, other than claiming that the Fays "fail to provide any basis for the contention." (ECF 21, at 29.)

In settling this debate, the Court must determine not only what the policy means by "apartments," but whether that meaning is clear or ambiguous. "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller*, 900 P.2d at 627. If a court concludes that ambiguity exists as a matter of law, it then inquires whether coverage would be "consistent with the objectively reasonable expectations of the insured." *Baker v. National Interstate Ins. Co.*, 103 Cal. Rptr. 3d 565, 572 (Ct. App. 2009); *see also Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 718 P.2d 920, 925 (Cal. 1986) ("Whether language in a contract is ambiguous is a question of law."). If "ambiguity still remains" after that inquiry, the court "constru[es] the ambiguous language against the insurer." *Baker*, 103 Cal. Rptr. 3d at 572.

The policy does not define "apartments," but the lack of an express definition does not "*by itself* render the term ambiguous." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1270 (Cal. 1993). Courts must attempt to interpret policy language "in the context of its usage in the policy itself." *Mirpad, LLC v. California Ins. Guarantee Assn.*, 34 Cal. Rptr. 3d 136, 148 (Ct. App. 2005) (emphasis omitted). Unfortunately, the policy here does not elsewhere refer to "apartments." It does mention "apartment buildings" in a separate "residential conversion" exclusion, where it excepts them from that exclusion if the insured—that is, Accelerated—is their owner. (ECF 21-2, at 42; ECF 21-5, at 7.) One thus gleans little, if anything, from the term's use in other policy contexts.

But that does not end the analysis. The proper meaning may also be derived by considering a term in its "ordinary and popular sense." *AIU Ins. Co. v. Superior Ct.*, 799 P.2d 1253, 1264 (1990). To that end, it may be "useful" to examine "various dictionary definitions" of a term, although doing so will "not necessarily yield the 'ordinary and popular' sense of the word if it disregards the policy's context." *MacKinnon*, 73 P.3d at 1214. Dictionaries are not particularly helpful on this point, beyond the obvious.

"Apartment" is defined by one as: (1) "A room or suite of rooms designed as a residence and generally located in a building occupied by more than one household" or (2) "An apartment house." *Apartment*, American Heritage Dictionary, 4th ed. (2000). Another has similar definitions: (1) "a room or set of rooms used as a dwelling and located in a private house, a hotel, or a building containing only such rooms or suites with necessary passages and hallways"; (2) "any room in a building"; or (3) "a building made up of individual dwelling units." *Apartment*, Webster's Third New International Dictionary (1993) (omitting one obsolete definition). The Fays' property could conceivably fall within many of these definitions. Even so, a court must not make "a fortress out of the dictionary." *MacKinnon*, 73 P.3d at 1214. It must instead "attempt to put itself in the position of a layperson and understand how he or she might reasonably interpret the exclusionary language." *Id*.

The lay conception of "apartments" probably includes various building types. But a person off the street is likely to recognize a two-unit structure like the Fays' as meeting that description. In fact, the definition of the terms "two-family house" and "duplex house" both embrace a house "designed for two families occupying separate *apartments* one above the other." *Two-Family House*, Webster's Third New International Dictionary (1993) (noting it is "called also *duplex house*") (emphasis added); *Duplex House*, Webster's Third New International Dictionary (1993) (defined as a "two-family house"). Similarly, the California courts have long accepted the concept of "duplex" apartments in multiple contexts. *See, e.g.*, *Clark v. City of San Pablo*, 75 Cal. Rptr. 726, 727 (Ct. App. 1969) (considering claim by owners of four-unit property that a tax "on the business of operating an apartment house," which was not imposed on "owners and operators of single-family, duplex and triplex rental units," was discriminatory); *People v. Cole*, 65 Cal. Rptr. 848, 849 (Ct. App. 1968) ("Defendant resided . . . in the lower apartment of a two-story stucco duplex . . . rented from [landlord]. [A witness] lived in the upper duplex apartment."); *People v. Forbes*, 221 Cal. Rptr. 275, 277 (Ct. App. 1985) (describing a property near a crime scene as "a duplex containing apartments with street address numbers 557 and 559");

*In re Hansen*, 174 Cal. Rptr. 3d 146, 149 (Ct. App. 2014) ("[Defendant] drove . . . to an apartment duplex located in the City of San Diego . . . [and] pounded on the door of the upstairs apartment.").

AIIC has two main responses to the Fays' arguments on behalf of their duplex. First, it insists that "duplex" is "a term with no legal significance in California and is instead used arbitrarily as a term of convenience." (ECF 21, at 29.) Even so, that doesn't tell us whether a duplex, with at least one unit rented, is appropriately termed as "apartments." AIIC adduces no evidence that properties like the Fays' can never be properly classed this way. Instead, its rebuttal consists mainly of unenlightening dictionary definitions of "duplex," such as: "a house which has been divided into two separate units for two different families or groups of people" and "a 2-family house." (*Id.*) *But see Two-Family House*, Webster's Third New International Dictionary (1993) (including "apartments" in the definition of "*duplex house*"). Neither of defendant's proffered definitions is inconsistent with one or both units being rented out and thus functioning as a two-unit apartment building.

Second, AIIC tries to pigeonhole the property as a "'mixed use structure[],' . . . defined as '[s]tructures intended for use or used both as "Residential property" and for one or more other purposes.'" (ECF 21, at 27.) Its reasoning proceeds like this: First, "residential property" is excluded from coverage. Second, the definition of "residential property" references "mixed use" buildings. And finally, because the Fays "resided in one unit" and "rented out the other," their property qualifies as a "mixed use structure," and therefore is excluded from coverage. (*Id.*; *see* ECF 21-1, at 27; ECF 21-3, at 44.) There seems to be a logical step missing, though. Perhaps AIIC is suggesting that earning rental income from the second unit somehow alters its residential character, so one unit is commercial and the other remains a dwelling—making the whole structure "mixed use." If so, the Court is unconvinced. The "residential purpose of an apartment complex" doesn't change just because it is also a "commercial" project that the owner "hopes to profit from." *See Atain Specialty Ins. Co. v. North Bay Waterproofing, Inc.*, No. 12-CV-03339-JST, 2013 WL 1819609, at *6 (N.D. Cal. Apr. 30, 2013).

7

Beside attacking the Fays' arguments about "apartments," AIIC does not make much of a case for its reading. The insurer offers no proposed definition for "apartments," the crucial term that it, after all, placed in the exclusion. The closest AIIC comes is asserting that the property types excepted from the definition of "residential property"—"apartments, student housing, dormitories, assisted living facilities, hotels or military housing"—are all "larger-scale structures . . . intended to be used as temporary living facilities." (ECF 17-1, at 24.) As AIIC would have it, all these examples are "used as transitory residences" that are "unlike" the Fays' property. (*Id.*) But it is not clear why "apartments" should be tarred with a "short-term" brush. *See People v. Venice Suites, LLC*, 286 Cal. Rptr. 3d 598, 610 (Ct. App. 2021) ("[T]he dictionary definitions for apartment house do not indicate a required length of occupancy."). And even if this claim is accepted, it still doesn't tell us anything about AIIC's view of "apartments" that precludes the Fays' property from joining their ranks. Further, its unsubstantiated allusion to "larger-scale structures" rings hollow. (ECF 17-1, at 24.) AIIC offers no evidence that these property types are necessarily a particular size.

"[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear," and thus "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." *State Farm Mut. Auto. Ins. Co. v. Jacober*, 514 P.2d 953, 958 (Cal. 1973). If AIIC meant to except only "apartments" of a certain size, tenancy duration, or number of units, it could have easily done so with clarity.

At best, the term "apartments" is ambiguous—susceptible to "two or more constructions, both of which are reasonable." *See Waller*, 900 P.2d at 627. And if "exclusions are ambiguous," such that a reasonable insured would "expect the insurer to furnish a defense, a defense is required." *B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 9 Cal. Rptr. 2d 894, 908 (Ct. App. 1992). Whatever AIIC's definition, it was surely no less reasonable than its insured's. And to avoid a finding of ambiguity, AIIC "would have to establish that its interpretation is the *only* reasonable one." *MacKinnon*, 73 P.3d at 1218. This it did not do. Because the exclusion was ambiguous, and because coverage

8

would have been "consistent with the objectively reasonable expectations of the insured," the Court construes "the ambiguous language against the insurer, and in favor of coverage." *Baker*, 103 Cal. Rptr. 3d at 572.

The exclusion has not been conclusively "proven by the insurer," so there was "potential for coverage" when AIIC declined to defend. *See Waller*, 900 P.2d at 625. Plaintiffs are entitled to summary judgment on AIIC's duty to defend.

**B.   Duty to Indemnify**

On the next issue—indemnification—the Fays have the benefit of a presumption. When an insurer wrongfully refuses to defend, as here, the insured "is free" to negotiate a settlement and stipulated judgment, which raises "an evidentiary presumption in favor of the insured" as to the "existence and amount of the insured's liability." *See Pruyn v. Agricultural Ins. Co.*, 42 Cal. Rptr. 2d 295, 299 (Ct. App. 1995). This presumption "shift[s] the burden of proof to the insurer to prove that the settlement was unreasonable," rather than binding it instantly. *Id.*

To obtain this presumption's advantage, the Fays must establish three "foundational facts": "(1) the insurer wrongfully failed or refused to provide coverage or a defense, (2) the insured thereafter entered into a settlement of the litigation which was (3) reasonable in the sense that it reflected an informed and good faith effort by the insured to resolve the claim." *Pruyn*, 42 Cal. Rptr. 2d at 312. They have proven the first two required facts, as described above. As for the third, the Fays obtained a judicial "determination of good faith" as to the settlement, which is "sufficient to satisfy the insured's prima facie burden." *See id.*; (ECF 1-2, at 20; ECF 16-1, at 26).

The burden therefore shifts back to AIIC to demonstrate that the presumptively valid settlement "was unreasonable (e.g., unreasonable in amount, entered collusively or in bad faith, or entered by an indemnitee not reasonable in the belief that he or she had an interest to protect)." *See Peter Culley & Assocs. v. Superior Ct.*, 13 Cal. Rptr. 2d 624, 633 (Ct. App. 1992). But AIIC has not even attempted this. Nowhere in its briefing does the insurer argue that the settlement was unreasonable. (*See generally* ECF 21; ECF 17; ECF 22.) AIIC thus

concedes that point. *See, e.g., Samica Enters. v. Mail Boxes Etc.,* 460 F. App'x 664, 666 (9th Cir. 2011) ("Arguments not raised in opposition to summary judgment . . . are waived."); *Pacific Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (ruling "argument was waived" when plaintiffs did not raise it "in their motion for summary judgment or opposition to the defendants' motion for summary judgment"). And, more importantly, AIIC provided no evidence to rebut the settlement's presumptive reasonableness. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials [for summary-judgment purposes] . . . ."); Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . [g]rant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."). Summary judgment must follow.

C.  **Good Faith and Fair Dealing**

Finally, the Fays request summary judgment on their claim for a breach of the implied covenant of good faith and fair dealing. (ECF 16-1, at 27–28.) On the current record, the Court cannot grant that request.

"[T]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 255 (Ct. App. 1990). The Fays have made little effort to establish the second requirement. Their motion contains some suggestive generalities, but these are scattered and conclusory. (*See, e.g.*, ECF 16-1, at 9 ("AIIC's interpretation of the coverage provided by the policies was improperly restrictive and contrary to the intent of the policy."); *id*. at 20 (discussing the "improperly narrow interpretation of the exception applied by AIIC").) The Fays' entire implied-covenant argument comprises barely more than a single page and is almost entirely devoted to the fees due if they had proved it. (*See id.* at 27–28.) The Court therefore denies summary judgment on this last claim.

|    |    |
|----|----|
| 1  | **CONCLUSION** |
| 2  | Plaintiffs' summary-judgment motion is **GRANTED** in part, and defendant's |
| 3  | summary-judgment motion is **DENIED**. The Court grants plaintiffs summary judgment on |
| 4  | defendant's duties to defend and to indemnify. Plaintiffs' motion is otherwise denied. In |
| 5  | light of this ruling, the parties must "contact Judge Butcher's Chambers within five days" |
| 6  | to "reschedule the Mandatory Settlement Conference." (*See* ECF 28, at 2.) |
| 7  | Dated:  March 25, 2024 |

                                                                                      Andrew G. Schopler
                                                                                      United States District Judge